DONNELLY GARMENT COMPANY, Appellant, v. ELMER JOHN KEITEL et al., as Members of the UNEMPLOYMENT COMPENSATION COMMISSION, and GLORIA A. BOSLER.—No. 39549.—193 S. W. (2d) 577.

Division One, March 11, 1946.

Rehearing Denied, April 8, 1946.

*Robt. J. Ingraham, Maurice M. Milligan, Burr S. Stottle* and *Reed, Ingraham & Milligan* for appellant.

1140

*Michael J. Carroll,* Chief Counsel, and *John F. Sloan,* Assistant Counsel, for respondents.

BRADLEY, C.—Gloria A. Bosler, claimant, was awarded unemployment benefits by the unemployment compensation commission. This award was affirmed by the circuit court, and the employer appealed.

The commission found the facts as follows: Claimant, for several years prior to August, 1940, was employed by appellant as a presser. In August, 1940, she became separated from her employment because of illness. October 21, 1940, she returned to the employer's premises and indicated that she might not be able to continue her employment, requested and was granted a leave of absence from November 1, 1940, to March 3, 1941. Late in November, 1940, she returned to work, but after a few days was again separated from her work because of illness. Upon ▮▮▮ expiration of the leave of absence, March 3, 1941, claimant did not return to work and appellant then placed her on the extra list until May 1, 1941, "when, claimant having indicated her intention not to return to work, even though her physical condition would permit reemployment, was removed from the extra list." During the period of claimant's employment at appellant's plant, she was a member of the union at that plant.

June 18, 1941, claimant secured work with Markay, Inc., a Kansas City employer, and worked there under a permit issued by another union. Her employment continued at Markay's until July 3, 1941, when she was laid off for lack of work. She filed for benefits July 9, 1941. August 13, 1941, appellant offered her work of the same type and at the same pay she received in her former employment with appellant. She refused to accept this offer of work, "stating that since she would be required to join the union at the employer's establishment as a condition of employment, her acceptance would result in her loss of standing as a member or permit holder under the jurisdiction of the" union at Markay's.

Specifically, the commission found: (1) That claimant left her work March 3, 1941, without good cause; (2) that her failure to return to work at the expiration of the leave of absence was a voluntary leaving; (3) that she was not required to resign from a bona fide labor organization as a condition of accepting the offer of work tendered by appellant; and (4) that claimant, on August 13, 1941, "refused without good cause to accept suitable work when offered her by the employer (appellant) by whom she was formerly employed."

Ella M. Hyde, appellant's employment manager, interrogated by Mr. Hoegen, an appeals referee, testified: "Gloria (claimant) became ill last spring (1941) with malaria and was off about eight weeks. During that time she drew benefit insurance and came in and told our nurses that she did not intend to return to work and therefore did not care to draw further benefits. A little later, in the fall, about the latter part of November (1940), we became busy and I called Gloria to come back and help us during the busy season. She came over three days and reported she did not feel well enough to work, at which time she left. I had never tried to contact her after that until I heard through this office (August 12, 1941) that she was looking for employment, and per Mrs. Fuller's suggestion, I called the girl and

I could have used her very, very nicely. We were quite busy in that department. . . . Q. And it was after that (claimant's employment at Markay's) an offer was made to her about August 13th (1941) to return to work? A. Yes, sir. Q. At that time there was work available at the Donnelly Garment Company for her? A. Yes, sir. . . . Q. Did you ever refuse her employment? A. No. Q. If you had had knowledge that she wanted employment at the time, before she filed a claim with this commission, would you have been willing to have given her this same work? A. Yes, I would have—would have been glad to have. Q. And you are now willing to give her that work? A. Yes, sir." Claimant did not testify.

Under the facts found, the decision of the commission was: "Claimant is disqualified for the week of March 3, 1941, for having left her work voluntarily and without good cause. Claimant is further disqualified for the week beginning August 13, 1941, and for the four weeks which immediately follow such week for having refused to accept suitable work without good cause. Subject to such disqualifications, claimant is eligible to receive benefits to the extent of her compliance with the regulations of the commission."

We might say that claimant's claim was twice before the commission. The first finding and award was reviewed by the circuit court and was by agreement remanded to the commission. The second and final finding and decision of the commission was on November 30, 1943. This finding and decision was affirmed by the circuit court on March 22, 1945.

Appellant makes five separate contentions, but these may be stated as follows: (1) That the award of benefits to claimant, under the facts and finding of the commission, is contrary to the letter and spirit of the unemployment compensation act; and (2) that if amended Sec. 9431 I(d), R. S. 1939, Laws 1941, p. 610, supports the award of benefits made, then such supporting part of said section is in contravention of Secs. 20 (taking private property for private use), and 30 (due process), of Art. 2, Constitution, 1875, and in contravention of the 5th and 14th Amendments (due process) of the Constitution of the United States.

 The commission's finding of facts is conclusive if supported by substantial evidence, and in determining the sufficiency of the evidence it must be considered in the light most favorable to the finding. Sec. 9432 A(b), R. S. 1939, as amended, Laws 1941, p. 620; Trianon Hotel Co. v. Keitel et al., 350 Mo. 1041, 169 S. W. (2d) 891, l. c. 896.

 In the course of this opinion we make quite a few repetitions. We do this so the reader may more easily understand.

The commission found that claimant voluntarily and without good cause quit her employment with appellant and without good cause refused to accept suitable work offered her by appellant. On these findings the commission disqualified claimant for the week of March 3,

1941, "for having left her work voluntarily and without good cause", and further disqualified her for the week "beginning August 13, 1941, and for the four weeks which immediately followed such week for having refused to accept suitable work without good cause." And the commission, subject to the disqualifications, awarded benefits to claimant.

Prior to amendment in 1941, Laws 1941, p. 610, Sec. 9431 I, R. S. 1939, provided as follows:

"I. An individual shall be disqualified for benefits under the following conditions and in each case the weeks of such disqualification shall be deducted from the benefit period and his wage credits charged correspondingly as if benefits had been paid, whether or not such individual obtains other employment during such weeks of disqualification." The disqualifying conditions follow in subsections, and the one pertinent just here follows:

"(a) For the week in which he has left work voluntarily without good cause, if so found by the Commission, and for not more than the four weeks which immediately follow such week, as determined by the Commission according to the circumstances in each case."

Sec. 9431 III, R. S. 1939, prior to the 1941 amendment, provided: "If the commission finds that an individual has failed without good cause either to apply for available suitable work when so directed by the commission or to accept suitable work when offered him by the commission, or to return to his customary self-employment (if any) when so directed by the commission, all wage credits accruing to such individual as to the date of such refusal shall be cancelled as of the date of such refusal."

In the brief respondents say: "The foregoing provision (III), prior to 1941, plainly required the cancellation of all the claimant's benefit rights upon refusal of an offer of suitable work. Such was the construction placed upon this provision by the commission and apparently approved in the case of S. S. Kresge Company v. Commission, 349 Mo. 590, 162 S. W. (2d) 838." That is, respondents concede that under Sec. 9431, III, prior to amendment, claimant was not entitled to benefits, but respondents contend that the 1941 amendment of Sec. 9431, Laws 1941, p. 610, so changed the law as to support the award to claimant as made by the commission.

Sec. 9431 I(a), R. S. 1939, and subdivision (a) of the amended section, are identical. Paragraph III of Sec. 9431, R. S. 1939, as it appeared therein, was omitted from the 1941 amendment, and subsection (d) was added, and disqualified as follows [Laws 1941, p. 611]:

"(d) For the week in which he failed without good cause either to apply for available suitable work when so directed by the Commission, or to accept suitable work when offered him, either through the commission or directly by an employer by whom the individual was formerly employed, or to return to his customary self-employment,

if any, when so directed by the commission, and not less than the following four weeks and for not more than the eight weeks which immediately follow such week, as determined by the commission according to the circumstances in each case."

The commission and the circuit court construed amended Sec. 9431 I(d) to mean that under the facts, claimant could not be disqualified for benefits for a greater period than nine weeks under (d), even though she failed without good cause to accept suitable work when offered.

Sec. 2 of the original unemployment compensation act, Laws 1937, p. 574, Sec. 9422, R. S. 1939, declared the public policy of the state as to the economic ills which the act was intended to improve. This public policy declaration recited that the legislature, in its considered judgment, declared that "the public good and the general welfare of the citizens of this state require the enactment of this measure, under the police powers of the state, for compulsory setting aside of unemployment reserves to be used for the benefit of persons unemployed *through no fault of their own*. Sec. 9 of the original act, Laws 1937, p. 589, Sec. 9430, R. S. 1939, provided in subsection (c) that "an unemployed individual shall be eligible to receive benefits with respect to any week only if the commission finds that . . . he is able to work, and *is available for work*."

Sec. 2, the public policy declaration of the original act, was amended in 1941, Laws 1941, p. 569, to read as follows:

"As a guide to the interpretation and application of this law, the public policy of this state is declared to be as follows: Economic insecurity due to unemployment is a serious menace to the health, morals, and welfare of the people of this state resulting in a public calamity. The Legislature, therefore, declares that in its considered judgment the public good and the general welfare of the citizens of this state require the enactment of this measure, under the police powers of the state, for compulsory setting aside of unemployment reserves to be used for the benefit of persons unemployed *who are entitled to benefits* under the provisions of this act. This law shall be liberally construed to accomplish its purpose to promote security against unemployment both by increasing opportunities for placements through the maintenance of a system of public employment offices and in providing for the payment of compensation to individuals in respect to their employment through the accumulation of reserves" (all italics ours).

Sec. 9430 was amended in 1941, Laws 1941, p. 607, but subsection (c), available for work, was retained. The language "through no fault of his own", appearing in the declaration of public policy in the original act, was omitted in the 1941 amended section. However, it will be noted that, in the public policy section as amended, unemployment reserves are to be used only for the benefit of the unemployed *who are entitled to benefits*. Who are entitled to benefits? The

answer, according to 9430 (c), is only an unemployed individual who is eligible for benefits with respect to any week and able to work *and* is *available* for work. Under the finding of the commission, claimant, without good cause, refused to accept suitable employment. Such being so, was she *available* for work? In Haynes v. Unemployment Compensation Commission et al., 353 Mo. 540, 183 S. W. (2d) 77, 1. c. 81, the court said:

"Section 9430(c), R. S. 1939, as amended, Laws 1941, pp. 566, 608, Sec. 7, Mo. R. S. A., requires that an unemployed individual, in order to be eligible to receive benefits, shall be 'able to work' and be 'available for work.' In making these two requirements it is apparent that the Legislature did not intend for unemployment benefits to be paid to persons who voluntarily or because of personal affairs, illness or physical disability withdrew from regular employment and thereafter arbitrarily restricted the type and kind of work that they would accept. When the Legislature declared that 'economic insecurity due to unemployment is a serious menace to the health, morals and welfare . . . of this state resulting in a public calamity' (Sec. 9422 R. S. 1939, as amended, Laws 1941, p. 509, Sec. 1, Mo. R. S. A.), it did not use the word 'unemployment' as including unemployment due to the cause mentioned, supra. The word 'unemployment' was, we believe, used as meaning not employed because of lack of employment, that is, unemployment resulting from the failure of industry to provide employment."

In the present case the commission found that claimant, without good cause, refused suitable work offered, therefore, her unemployment was not due to the *failure* of industry to provide employment. An Oklahoma case, Board of Review et al. v. Mid-Continent Petroleum Corp., 193 Okla. 36, 141 Pac. (2d) 69, involved the validity of a labor dispute in which he was engaged. He and some 200 other employees of the corporation went out on a strike and the evidence was that he would not have accepted employment with the corporation had such been offered. The award to Cox was vacated. The court said [141 Pac. (2d) 1. c. 73] : "In the circumstances of this case we do not think it can be said that the claimant Cox was 'available for work.' He had left his employment voluntarily; he remained away from it of his own volition and would not return to work except upon such terms and under such conditions as he might name and stipulate."

 Appellant contends that the offer of suitable work to claimant and her refusal, without good cause, was of a continuing nature and "should be construed as a continuing offer and refusal from week to week." From Mrs. Hyde's evidence it would appear that claimant's refusal without good cause to accept suitable work offered was of a continuing nature. "A general rule of presumptions is that, where the existence at one time of a certain condition or state of things of a continuing nature is shown, the presumption arises that such condition

or state continues to exist until the contrary is shown.'' Missouri Power & Light Co. v. City of Bucklin et al., 349 Mo. 789, 163 S. W. (2d) 561, l. c. 564. See also, McDaniels v. Cuthburth et al. (Mo. Sup.), 270 S. W. 353, l. c. 359; Greenleaf On Evidence (16th Ed.), p. 138, Sec. 41; 2 C. J., p. 267, Sec. 594; 2 C. J. S., Sec. 216(h), p. 825.

It is pointed out in the Missouri Power & Light Co. case, supra, that such presumption is allowed to prevent a failure of justice, and and its application here well serves such purpose. Under this presumption and under the facts, claimant not only refused without good cause to accept suitable work when offered on August 13, 1941, but, absent evidence to the contrary, so refused on each succeeding week thereafter and was disqualified for benefits not only for the week of August 13, but for each succeeding week thereafter.

■ Several sections of our unemployment compensation act are involved in the present case and are in pari materia. In construing such statutes it is not only proper to consider acts passed at the same session of the legislature, but acts passed at a prior or subsequent session may be considered, and even acts which have been repealed may be considered. State ex rel. and to the use of Geo. B. Peck & Co. v. Brown, 340 Mo. 1189, 105 S. W. (2d) 909, l. c. 911. And a primary rule of construction of a statute is to ascertain from the language used the intent of the lawmakers if possible, and to put upon the language its plain and rational meaning in order to promote the object and purpose of the statute. Haynes v. Unemployment Compensation Commission, supra, l. c. 81, and cases there cited.

■ Under the law, the facts and the finding of the commission, we rule that claimant was not *available* for work and was therefore not entitled to benefits. To rule otherwise would be not only unjust and beyond the wholesome purpose of the law, but would invite the filing of unjust claims. Our ruling is certainly not contrary to the spirit of the unemployment compensation act, nor is it contrary to the letter of amended Sec. 9431 I (d), as respondent's brief and argument would imply.

Having reached the conclusion that claimant was not entitled to benefits, it will not be necessary to rule appellant's point on the constitutional validity of amended Sec. 9431 I(d).

The judgment of the circuit court affirming the award by the commission should be reversed and the cause remanded with direction to the circuit court to set aside its judgment of affirmance and to enter a judgment reversing the decision of the commission. It is so ordered. *Dalton* and *Van Osdol, CC.,* concur.

PER CURIAM:—The foregoing opinion by BRADLEY, C., is adopted as the opinion of the court. All the judges concur.