237 S.W.2d 201 (1951)
DITTMEIER
v.
MISSOURI REAL ESTATE COMMISSION.
No. 27914.
St. Louis Court of Appeals, Missouri.
February 20, 1951.
As Modified on Denial of Rehearing March 26, 1951.
*202 J. E. Taylor, Atty. Gen., J. Jules Brinkman, Asst. Atty. Gen., Robert R. Welborn, Asst. Atty. Gen., for appellant.
Joseph Boxerman, Joseph Nessenfeld, St. Louis, for respondent.
HOUSER, Commissioner.
This is an appeal from the judgment of the circuit court reversing, revoking and annulling the order and decision of the Missouri Real Estate Commission suspending the license of Frank L. Dittmeier as a real estate broker for a period of six months.
Acting pursuant to the authority conferred upon it by the Missouri Real Estate Commission Act, Laws of Missouri 1941, p. 424, Mo.R.S.A. § 8300.10, R.S. 1949, § 339.100, which authorizes the commission to investigate the business transactions of any real estate broker and to suspend his license if he be found guilty of
"Making substantial misrepresentations or false promises in the conduct of his business, or through agents or salesmen or advertising, which are intended to influence, persuade or induce others". Section 10(a), or "Any other conduct which constitutes untrustworthy or improper, fraudulent or dishonest dealings, or demonstrates bad faith or gross incompetence". Section 10(g). the commission issued a notice to respondent, directing him to appear before it to answer certain charges. The charges *203 were set forth in four counts, one of which was abandoned, and on three of which evidence was heard. In due time, the commission made and adopted certain findings of fact and conclusions of law in which respondent was adjudged "guilty of violation of Sections 10a and 10g of the Missouri Real Estate Commission Act." A six months suspension was imposed as a penalty. Thereupon respondent procured an order staying the enforcement of the suspension order pending final disposition of the case and filed proceedings for review in the circuit court.
The order of the commission is subject to review by the courts to determine whether it is "authorized by law" and whether it is "supported by competent and substantial evidence upon the whole record." Constitution of Missouri, 1945, Art. V, § 22. Although the reviewing court cannot substitute its own judgment for that of the administrative tribunal, and should adhere to the rule of due deference to findings of fact involving the credibility of witnesses, its duty is to determine whether the tribunal reasonably could have made its findings and reached its result upon consideration of all of the evidence before it and to set aside decisions clearly against the overwhelming weight of the evidence. Wood v. Wagner Elec Corp., 355 Mo. 670, 197 S.W.2d 647; Williams v. International Shoe Co., Mo.App., 213 S.W.2d 657, loc.cit. 662; Dyche v. Bostian, Mo.Sup., 233 S.W.2d 721. In determining the sufficiency of the evidence it must be considered in the light most favorable to the finding, Donnelly Garment Co. v. Keitel, 354 Mo. 1138, 193 S.W.2d 577, together with all reasonable inferences that may be drawn therefrom that seem to support it, and the court must disregard all opposing and unfavorable evidence. Schmidt v. Rice-O'Neill Shoe Co., Mo.App., 226 S.W.2d 358.
Count 1. Henry and Leona Jones transaction.
The Charge: (1) Entering into an earnest money contract calling for the sale of certain property to Henry Jones and wife for $6,500 and then making the total price to the purchasers $6,995 by "wilfully, fraudulently and illegally, by fraud, trickery, misrepresentation and other unjust and unethical practices," securing the signatures of the Jones couple to two deeds of trust aggregating $6,395, and "wilfully" accepting $600 in cash; and (2) issuing a closing statement to the purchasers which was designedly misleading, confusing and fraudulent, in that it omitted to mention or account for any deed or deeds of trust.
The Findings: (1) That respondent sold the property to Henry Jones and wife under an earnest money contract for a sale price of $6,500; (2) that the purchasers were uneducated colored people not versed in business matters; (3) that the purchasers assumed a first deed of trust for $4,500 which respondent had placed against the property; that respondent secured their signatures to a second deed of trust for $1,895 and accepted $600 cash; that the actual cost to the purchasers was $6,995; and that $405 was refunded by respondent to the purchasers, after notice of hearing had been served; (4) "that the said Frank L. Dittmeier did not secure by any means the signatures of said Henry and Leona Jones to two certain deeds of trust as alleged in the notice of hearing"; (5) that a proper amount of revenue stamps was affixed to the deed; and (6) that respondent issued a closing statement to the purchasers which was designedly misleading, confusing and fraudulent in that it omitted to mention or account for any deed or deeds of trust.
We conclude from an examination of the testimony of Jones and Dittmeier and from the documentary evidence adduced that Findings Nos. 1 and 3 are supported by competent and substantial evidence upon the whole record. We will not review the evidence thereon in view of the fact that respondent does not contend otherwise on this appeal.
Can Findings Nos. 1 and 3 properly be made the basis for the commission's conclusion that respondent violated Sections 10(a) or 10(g) of the Act? We think not. Dittmeier was charged with fraudulently, etc., and by trickery securing signatures *204 to two deeds of trust whereby the agreed price of $6,500 was made into a total price of $6,995. Finding No. 4 specifically and completely exonerates and absolves him of any wrongdoing in this connection and prevents the preliminary Findings Nos. 1 and 3 from providing any support for a finding of guilt under the sections cited. If any inference of misconduct could be drawn from Finding No. 3, its force and effect is dissipated by Finding No. 4 and we are obliged to sustain the contentions of respondent in this connection.
Is Finding No. 6 supported by competent and substantial evidence upon the whole record? Respondent's statement introduced in evidence and characterized by appellant as the "closing statement" shows on its face that it is nothing more or less than a recapitulation of the cash account between the parties in which the closing costs (including items of cost of recording the first and second deeds of trust) are itemized. It is not a closing statement in the generally accepted understanding of that term and obviously and patently is insufficient to support the finding. Furthermore, it does in fact refer to deeds of trust.
Count 2. Virginia Maguire transaction.
The Charge: Selling certain property to Virginia Maguire, causing her to become dissatisfied with the property, causing her to list the property with respondent as her agent, and then "by artifice, trickery and deceit" inducing her to sign a deed for a totally inadequate consideration of $325 when her equity in the property was worth $1,000, and at a time when respondent well knew that he had previously sold the property to one Leonard J. Brady for $4,100, and tricking her to deed the property to a straw party, one Vito Scalzo, a nonexistent person, and an alias assumed by respondent.
The Findings: That on January 24, 1945 respondent sold certain real estate to Mrs. Maguire for $3,350; that by trickery, false representations, artifice and deceit he induced her to sign a warranty deed conveying the property to Vito Scalzo, straw party for respondent; that the trickery consisted of falsely representing to Mrs. Maguire that the holder of the deed of trust was pressing for foreclosure and that the insurance was subject to cancellation because of the vacancy of the property, whereas respondent knew that a vacancy rider could have been attached to the insurance policy; that respondent had already sold or contracted to sell the property to Leonard J. Brady at the time he secured Mrs. Maguire's signature to the deed and that at that time respondent was actually representing Mrs. Maguire as her agent to sell the property for her.
The Evidence: Virginia Maguire testified that on January 24, 1945 through respondent she purchased the property at 4553 Maffitt Avenue for $3,350, paid $300 down, and assumed a mortgage for the balance. The occupants did not quit the premises for three weeks. It was the 16th or 23rd of March before repairs which respondent agreed to make were completed. Mrs. Maguire did not move into the premises for the reason that her husband, a disabled war veteran, refused to do so, whereupon she went to the Office of Price Administration to secure the right to increase the rental. She waited some 6 or 7 weeks for them to take action. In June, 1945 respondent told her that the mortgage holder had been to the premises; that the weeds were up; that the place had not been cleaned out; that the chickens had been in the cottage at the back; that the mortgage holder was very dissatisfied and that Mrs. Maguire would "have to do something about it." At that time respondent asked her to let him sell it to some colored people; that he had a client; that he would make her a profit. She at first demurred. He renewed the complaint that the mortgage holder was afraid of a fire (the place was vacant) and again urged her to let him sell it whereupon she signed a contract during the last part of June or the first week in July to sell the property for $3,750 with a 5% commission to respondent; that respondent placed an advertisement in the St. Louis Post-Dispatch the next day, July 8, 1945, as follows:
"Maffitt, 45534 room frame bungalow vacant; bath, also 1-story frame in rear; *205 $500 cash, balance rent. Dittmeier, 706 Chestnut, CH 9116"; that on the night of July 11, 1945 she received a special delivery letter from respondent, as follows:
 "July 11, 1945
"Mrs. Virginia Maguire, "1027 Grattan St., "St. Louis, Missouri. "Dear Mrs. Maguire:
"Will you kindly -all at the office Thursday, July 12, between 10:30 and 11:00 1 'clock as the holder of the Deed of Trust was here and we would like to talk to you regarding the property being vacant at this time.
 "Yours very truly,
 "Frank L. Dittmeier R. E. Co.
 "By Frank L. Dittmeier
"SPECIAL DELIVERY"
She testified that in response to this letter she went to respondent's office on July 12th and at that time he told her that "they were very badly dissatisfied, that the place was in danger of fire there and the mortgage holder refused to stay on the loan"; that respondent offered her $200 "out of his own pocket" for her to turn the property back, and that he intended to make some repairs on the place and resell it. She reminded him that he had a contract to sell it for her, a 30-day contract. He told her it would be easy to sell but that he wanted 60 days and asked her to "give him a chance". She again argued that he should try to sell it for her. Then respondent informed her that she would either have to turn the property back or the mortgage holder would "go off of the loan * * * they were going to foreclose at once, * * * take the property at once (within three days) because it was dangerous without insurance * * * the insurance was cancelled or something." She told him "Well, if you are going to take it I won't let you have it for that amount." He offered $225, then $250, $275, $300, then $325. Mrs. Maguire agreed to take $325 which was paid to her at the time, and on that day, July 12, 1945, she executed a warranty deed to Vito Scalzo, straw party for respondent.
Mrs. Maguire had placed a chair, bed, stove and some other odds and ends of furniture in the house. After the execution of the warranty deed and on the same day she took a streetcar to the property, found that the back door had been broken in, the Yale locks which she had placed on the doors changed, and she was unable to get into the house. The next day, July 13th, she returned to the house. Respondent's son let her in with a key. When she finally gained entrance to the premises she found that "the windows had been cleaned, furniture and things had been put back and straightened around * * * my husband's tools gone from the place * * *."
Mrs. Maguire further testified that when she was unable to get into the house on the 12th she called respondent, who stated that he had nothing to do with the new locks or the breaking of the door; and that on the 13th when she was in touch with him again respondent "said he had sold it." Respondent told her that the door must have been broken open by workmen on the 12th.
Respondent conceded that he wrote the letter of July 11th and had a conference with Mrs. Maguire on July 12th at which time he bought the property for $325. He would not deny having advertised the property in the newspaper, stating "We might have advertised it." The following appears in the record:
"Q. Did you try to sell Brady prior to the 12th of July? A. Yes, I tried to sell itthat was the usual
Q. That was about the 8th of July? A. I had * * *."
Leonard J. Brady, the purchaser from respondent, testified that he saw the advertisement in the Sunday paper, went out to see the property by himself on Wednesday or Thursday of that week, looked in the windows of the houses, determined to make a down payment on the property, drew some money out of a bank and went to the office of respondent for the first time on July 14th; that he purchased the property then and there for $3,750 and *206 made a $200 down payment under the earnest money contract.
The deed from Vito Scalzo to Leonard J. Brady was dated and acknowledged July 14, 1945 and was filed for record on July 18, 1945.
Mrs. Maguire testified that in a subsequent conversation between her and Brady with reference to the matter, the latter made this statement, referring to respondent: "Listen, don't let him tell you that sale was the 14th; that sale was made long before the 14th and done with before the 14th."
This hearsay testimony is not "competent and substantial evidence" and could not provide the legal basis for a finding of fact by the commission. State ex rel. De Weese v. Morris, 359 Mo. 194, 221 S.W. 2d 206.
If the findings are to be upheld they must be upheld on the basis of circumstantial evidence. Probative circumstantial evidence may be sufficient to prove the performance or attempt to perform the acts proscribed by the statute. State ex rel. De Weese v. Morris, supra.
In civil jury cases the proof of circumstantial evidence "must be such that the necessary facts to support a verdict may be inferred and must reasonably follow" and "the evidence must exclude guesswork, conjecture, and speculation as to the existence of the necessary facts" and the proof should have a tendency to "exclude every other reasonable conclusion but the one desired". Bowers v. Columbia Terminals Co., Mo.App., 213 S.W.2d 663, 670.
Certainly no less degree of proof should be required in a proceeding such as this where an effort is being made to suspend the license of a real estate broker which, if successful, will necessarily deprive him of his means of livelihood, at least temporarily.
While it is true that there is no evidence that the representations made by respondent that the mortgage holder was dissatisfied, wanted off the loan and was about to foreclose, etc., and that the insurance was subject to cancellation, were false, nevertheless we must consider these representations, whether true or false, in the light of the relation which was then existing between respondent and Mrs. Maguire, that of customer and broker. It was a confidential and fiduciary relationship under which respondent was obligated to be perfectly frank with his principal, to make a complete and full disclosure of all material facts concerning the transaction which might affect her decision to sell her property to him, to be loyal to his client, and to exercise the utmost fidelity and good faith towards her. Johnston v. McCluney, Mo.App., 80 S.W.2d 898. He was under ties of obligation as exacting as those imposed on a trustee in favor of his beneficiary. If respondent had sold or contracted to sell the property to Brady prior to July 12th respondent was under an absolute obligation to reveal that fact to his client. Garner v. Woods, Mo.App., 24 S.W.2d 708. "Before dealing with the principal on his own account * * * an agent has a duty, not only to make no misstatements of fact, but also to disclose to the principal all material facts fully and completely. A fact is material * * * if it is one which the agent should realize would be likely to affect the judgment of the principal in giving his consent to the agent to enter into the particular transaction on the specified terms. Hence, the disclosure must include not only the fact that the agent is acting on his own account * * *, but also all other facts which he should realize have * * * a bearing upon the desirability of the transaction from the viewpoint of the principal.'" Restatement of Agency, Section 390, Comment A.
Fraud may be shown by concealment with intent to defraud as well as by misrepresentation if such concealment is material. Klika v. Albert Wenzlick Real Estate Co., Mo.App., 150 S.W.2d 18, loc. cit. 24.
Even if the contract to sell to Brady had not actually been consummated it was respondent's duty to reveal the fact that Brady was interested in the property and was a prospect for the sale of the property, if that were true. The fact that respondent *207 had a contract to sell the property, had advertised it for sale, had tried to sell it to Brady on the 8th of July, that Brady had looked at the property on the 11th of July, that on July 13th respondent stated to Mrs. Maguire that he "had sold it"; that someone had entered the house, straightened up the furniture and placed new locks on the doors apparently before her execution of the deed to respondent, and that within the short time of two days thereafter respondent's straw party executed a deed to Brady, together with the other evidence above referred to, together with the reasonable inferences that may be drawn therefrom, is sufficient competent, circumstantial evidence upon the basis of which the commission properly could make the finding that respondent had already sold or contracted to sell the property to Brady at the time he procured the deed from Mrs. Maguire.
This alone is sufficient to justify the finding of a violation of Section 10(g) of the Act and the imposition of a suspension of respondent's license.
Count 3. Walter and Lela B. Greene transaction.
The Charge: Securing the signatures of the Greenes to an earnest money contract calling for the payment of the purchase price in all cash or deeds of trust to be placed by respondent, which contract did not contain any clause for the protection of the purchasers from forfeiture of earnest money in the event such financing could not be placed, contrary to good real estate practice requiring the earnest money contract to be contingent upon the placing of proper financing; misrepresenting the income from the property; fraudulent misrepresentation concerning the purchasers' ability to get OPA certificates of eviction when they were not eligible therefor because they had not paid in at least 20% of the purchase price; fraudulently tricking and deceiving the purchasers by failing and refusing to make repairs as agreed to in the earnest money contract; fraudulently and improperly representing clients by receiving an excessive commission for the placing of the financing, misrepresenting to the Greenes that financing under the G. I. Bill of Rights, 38 U.S.C.A. § 693 et seq., was unavailable and inducing them to permit respondent to place the loans.
The Findings: The securing of the signatures and the omission of the clause, as charged; that the proper real estate practice is to make all earnest money contracts contingent upon the placing of proper financing; that false representations were made to the Greenes regarding the rental of the property by one Vera Nash, an agent of respondent; that "The Commission finds that it is doubtful whether or not Respondent Frank L. Dittmeier knew the actual monthly rental of said property as alleged in the notice of hearing"; that respondent knowingly committed a fraud and misrepresentation with reference to the eligibility of the Greenes for certificate of eviction by representing to them that the $750 down payment they made was sufficient to secure such a certificate from the Office of Price Administration when in truth and in fact it was not; that respondent knew and was informed that the Greenes desired to purchase the property as a residence for themselves; that although the earnest money contract provided that "seller will repair and paint window screens, repair chimney where it leaks, and replace light fixtures in dining room and living room without cost to buyer," respondent neglected to comply with said contract until after the notice of hearing in this case was served upon him.
Omission of clause relieving against forfeiture:
While the earnest money contract contained no provision relieving against forfeiture of the earnest money in case financing could not be arranged this did not make a case against respondent for the reason that there is no statute requiring such a provision in an earnest money contract, nor is there any evidence in this record that the commission has promulgated rules or regulations requiring the same, or that the inclusion of such a provision is a custom or a generally accepted standard of real estate practice in the community.
*208 There was no evidence that as a result of this omission the Greenes were imposed upon, overreached or damaged; or that a forfeiture or loss was occasioned to anyone, or that any forfeiture was attempted to be enforced. There was no evidence from which it could be concluded that respondent employed this form of contract in any fraudulent or dishonest manner, or in bad faith.
Representations re rentals: In a proceeding of this kind a real estate broker cannot be held responsible for the acts of an employee under the rule of respondeat superior, in the absence of proof of culpable fault or intentional misconduct on his part toward his client. Davis v. Missouri Real Estate Commission, Mo. App., 211 S.W.2d 737.
Representations re OPA certificate: There is not a scintilla of evidence in the record to support this finding. The Greenes talked to the OPA officials and to their attorney after the earnest money contract was signed but there is no evidence that they talked to respondent concerning the OPA requirements.
Failure to make repairs: Under the contract "seller" was obligated to repair and paint window screens, repair chimney leaks and replace light fixtures in dining and living rooms. Mrs. Greene testified that respondent paid her for the new light fixtures, and that she did not know whether the screens were painted and repaired or whether the chimney was repaired. Mr. Greene testified that the screens had been painted but not repaired. He did not know whether the chimney had been repaired.
The complaint charged fraud, trickery and deceit. The best that can be said of the uncertain, indefinite and ambiguous evidence in support of this charge is that it proved neglect. It certainly did not rise to the gravity of fraudulent, untrustworthy, improper or dishonest dealings, nor did it demonstrate bad faith, within the intendment of Section 10(g) of the Act.
We conclude that Findings of Fact Nos. 1, 2, 3, 4, 5, 7, 8, 11, 12, 13, 14, 15, 16, 21 and 22 are supported by competent and substantial evidence upon the whole record; that Findings of Fact Nos. 6, 9, 10, 17, 18, 19 and 20 are not so supported; that the commission reasonably could not have reached its conclusion that respondent was guilty of violation of Section 10(a) of the Missouri Real Estate Commission Act as set forth in its Conclusion of Law No. 3; that the commission reasonably could have reached the conclusion that Frank L. Dittmeier was guilty of violation of Section 10(g) of said Act upon a consideration of all the evidence before it; that Finding of Fact No. 11 "that the licensee Frank L. Dittmeier had already sold or entered into a contract of sale covering the real estate in question, with one Leonard J. Brady at the time the licensee secured the signature of said Virginia M. Maguire to said warranty deed for a consideration of $325 and that at and prior to such time the licensee had been employed by said Virginia M. Maguire as agent to sell such property for her" is a sufficient basis upon which to find Frank L. Dittmeier guilty of a violation of Section 10(g) of the Act; that the judgment of the circuit court should be reversed; that the case should be remanded to the commission with directions to set aside its Findings of Fact Nos. 6, 9, 10, 17, 18, 19 and 20 and to set aside its finding that respondent was guilty of violation of Section 10(a) of the Missouri Real Estate Commission Act, to set aside its assessment of a six months' suspension as a penalty for the violation of Sections 10(a) and 10(g) of said Act, and for the assessment of whatever penalty in its discretion the commission may deem proper under the circumstances for the violation of Section 10(g) of said Act. The Commissioner so recommends.
PER CURIAM.
The foregoing opinion of HOUSER, C., is adopted as the opinion of the court.
The judgment of the circuit court is, accordingly, reversed and the cause remanded.
ANDERSON, P. J., and McCULLEN, and BENNICK, JJ., concur.