**STATE of Missouri ex rel. SMITHCO TRANSPORT COMPANY, a corporation, Appellant,**

v.

**PUBLIC SERVICE COMMISSION of the State of Missouri and Tyre W. Burton, E. L. McClintock, Charles L. Henson, M. J. McQueen, and D. D. McDonald, as members of said Public Service Commission, Respondents.**

No. 46690.

Supreme Court of Missouri,

En Banc.

July 14, 1958.

Rehearing Denied Sept. 8, 1958.

**8**

Kyle D. Williams, Jefferson City, Neale, Newman, Bradshaw, Freeman & Neale, Flavius B. Freeman, Donald J. Hoy, Jean Paul Bradshaw, Springfield, for appellant.

Glenn D. Evans, Gen. Counsel, Thomas J. Downey, Asst. Gen. Counsel, Jefferson City, for respondents.

Henry Andrae, Hendren & Andrae, Jefferson City, for protestant Dairyland Transp. Corp.

William W. Beckett, Alfred J. Hoffman, Marvin O. Young, Columbia, amici curiae for Missouri Farmers Ass'n, Inc.

Laurance M. Hyde, Jr., St. Louis, for Frisco Transportation Co.

WESTHUES, Judge.

The State Public Service Commission denied Smithco Transport Company a certificate of convenience and necessity for an intrastate freight carrier between various points in Missouri. The primary purpose for which a permit was sought was the transportation of milk and other dairy products from the plant of Sanitary Milk Producers, a farmers' co-operative, at Lebanon, Missouri, to St. Louis, Missouri. The case was heard by two members of the Commission. One of these members dissented from the order of the Commission denying a certificate or permit. The Circuit Court of Cole County affirmed the order. On appeal to the Kansas City Court of Appeals, the ruling of the Cole County Circuit Court was affirmed. 307 S.W.2d 361. The Court of Appeals transferred the case to this court.

The view we have taken of this case renders unnecessary our ruling on many questions that were considered at length by the Kansas City Court of Appeals. For example, the question of whether the federal authorities under the Agricultural Marketing Agreement Act, 7 U.S.C.A. § 601 et seq. had pre-empted the field so as to prevent the Public Service Commission from taking jurisdiction of this case. See opinion of Court of Appeals, 307 S.W.2d loc. cit. 370–374(1) (2) (3) (4, 5).

The point on which we rule this case was considered by the Court of Appeals beginning at page 374(6) of 307 S.W.2d. It is whether the transportation of milk and dairy products by the cooperative from its Lebanon plant to the St. Louis market is embraced within the exemptions contained in the statutes as not requiring a certificate of convenience and necessity.

Before we consider that point, we shall relate some of the incidents giving rise to this litigation. Sanitary Milk Producers is a farmers' co-operative having a membership of over 5000 located in the states of Illinois and Missouri. A majority of its members are dairy farmers in southwest Missouri. It has a plant at Lebanon where it receives milk in large quantities from the producers. The milk is chilled and then immediately taken in tanks to the St. Louis market where it is sold to distributors.

These distributors process the milk, bottle it, and retail it to customers. The applicant for a certificate of convenience and necessity, Smithco Transport Company, by contract with Sanitary, transports the milk in large tanks to the St. Louis markets. Smithco, the record shows, hauled exclusively for Sanitary. All tanks and equipment were kept at the plant of Sanitary and were ever ready at a moment's notice to haul the milk. It was in evidence that it was necessary to deliver the milk promptly so as to comply with the health regulations concerning "Grade A Milk." Smithco had previously obtained an interstate permit to haul milk.

A number of protestants appeared before the Public Service Commission objecting to granting Smithco a certificate. The principal objector was Dairyland Transportation Corporation, a holder of an intrastate certificate to haul milk and other products. Its specialty was the transportation of dairy products.

Smithco began hauling Sanitary's milk in 1955 after a dispute over labor trouble interfered with the prompt delivery of milk. After Smithco began hauling milk, its trucks were being stopped on their way to market because Smithco did not have a certificate of convenience and necessity. Prosecution was threatened. Smithco applied to this court for a writ of prohibition to enjoin the prosecution. Dairyland Transportation Corporation, the main objector in this case, filed a brief in this court in opposition to granting the writ. This court denied the writ.

█ In June, 1955, Smithco filed its application with the Public Service Commission for a permit to haul milk and other dairy products. In the Court of Appeals, Smithco contended that the Public Service Commission did not have jurisdiction for the reason that the hauling of milk and dairy products was exempt by virtue of the statutes. Protestant Dairyland suggested that Smithco was estopped to question jurisdiction because it had filed an application

with the Commission. The Court of Appeals ruled, and we think correctly so, that the question of jurisdiction was a live issue in the case on appeal. See 307 S.W.2d loc. cit. 374(6).

█ The statutes (all references are to RSMo 1949, V.A.M.S., unless otherwise noted) involved in this case are Secs. 390.030 and 274.300. (Sec. 390.030 is numbered in V.A.M.S. as 390.031.) Sec. 390.-030 reads in part as follows:

"Vehicles exempted

"The provisions of sections 390.011 to 390.176 shall not apply to:

*     *     *     *     *     *

"4. Motor vehicles while being used exclusively to transport:

"(1) Stocker and feeder livestock from farm to farm, or from market to farm;

"(2) Farm or dairy products including livestock from a farm or dairy to a creamery, warehouse or other original storage or market; * * *."

Sec. 274.300 reads:

"Provisions of law in conflict not applicable—exemptions

"1. Any provisions of law which are in conflict with this chapter shall be construed as not applying to the associations herein provided for.

"2. Any exemptions whatsoever under any and all existing laws applying to agricultural products in the possession or under the control of the individual producer, shall apply similarly and completely to such products delivered by its former [farmer] members, in the possession or under the control of the association."

Sec. 274.300 was not considered in the opinion of the Court of Appeals. In fact, it was not mentioned. Secs. 390.030 and 274.300 were not referred to in the findings of fact and conclusions of law by the Public Service Commission.

The Missouri Farmers Association, Inc., filed a brief in this court as amici curiae. The only point made in this brief is the claim that the Public Service Commission did not have jurisdiction of this case because Sec. 274.300, supra, extended the exemptions contained in 390.030, supra, to farmers' co-operatives.

The Court of Appeals, in its opinion, referred to the contention of appellant as to jurisdiction of the Public Service Commission and stated, 307 S.W.2d loc. cit. 376 (7): "Appellant has limited its contention of lack of jurisdiction on the part of the Missouri Public Service Commission to those vehicles while being used exclusively in making the described hauls of fluid milk from the farm via its Lebanon plant to St. Louis in the Federal Marketing Area. While the record is silent as to who hauls the milk from the farm or dairy farm to the co-operative, it is apparent from the record that appellant does not perform that service but rather it is the second hauler, who after the milk has been delivered to the co-operative at Lebanon and there tested, weighed, intermingled and cooled, and possibly a part thereof held back for processing into cheese or butter, transports the milk from the co-operative at Lebanon to the Federal Marketing Area. It is this separate second haul by appellant that is in question here." And the opinion, on the same page, made reference to a rule, applicable to the present case, made by the Public Service Commission. Note the following: "Respondent Public Service Commission also refers to its interpretation of the Missouri Bus and Truck Law of 1931 promulgated by it on November 27, 1933, as being its long accepted and correct one; namely: 'As to when the status of goods being transported ceases to be farm-to-market, the "rule of thumb" adopted by the Commission is that goods are entitled to one free haul, for example, when cream is transported from the farm to the creamery or milk station and then picked up and carried by another carrier or for another owner to its ultimate destination, the second haul is not exempt.' " It is our opinion that both the Public Service Commission, in adopting the "rule of thumb," as it was called, and the Court of Appeals, in its opinion, failed to give due consideration to Sec. 274.300, supra.

These statutes, that is, Secs. 390.030 and 274.300, supra, do nothing more than preserve the right of the farmer to transport his product to market. It is within the memory of the older generation, and the courts may take judicial notice thereof, that before the construction of the high type roads and before the advent of cars and transport trucks, the farmer would haul his product to market by horse-drawn wagons,—or often on foot. The dairy farmer of those days would generally deliver milk to his customers in towns and cities before daybreak. Those, too, were the days when many city folks harbored a cow or milk goat to provide the family needs. Then, too, it was not infrequent that dairies would be found within cities of considerable size so as to be near the market.

Conditions have changed. Today, we have mass production and mass transportation. The cows and goats have disappeared from the towns and cities. Dealing in dairy products has become big business. Much of the freight formerly hauled by the railroads is now transported over hard surface highways by transportation companies in large trucks, vans, and trailers. The regulation of this method of hauling was, by the legislature, delegated to the Public Service Commission. The legislature saw fit by Sec. 390.030 to exempt from the regulations the transportation of farm products, including dairy products from a farm or dairy to a creamery, warehouse, or other original storage or market. It is conceded, and certainly there can be no dispute over the fact, that by this exemption a dairy farmer is permitted, if he so desires, to transport his dairy products direct to the market without a permit or a certificate of convenience and necessity.

The record in this case shows that it has become necessary to transport milk from producers hundreds of miles to the large city markets. The case before us involves the transportation of milk from the southwest section of the state to the City of St. Louis. It is apparent that even though an individual dairy farmer of southwest Missouri may transport his products direct to markets in St. Louis, it would not be profitable for him to do so. The legislature evidently was cognizant of this fact and to preserve to the farmers the right to transport their products to market without securing a permit from the Public Service Commission, it extended this exemption to include co-operative associations. Sec. 274.300(2) reads: "Any exemptions whatsoever under any and all existing laws applying to agricultural products * * * shall apply similarly and completely to such products delivered by its former [farmer] members, in the possession or under the control of the association." Note that the statute says, "such products *delivered by its former* [farmer] *members,* in the possession or under the control of the association." (Emphasis supplied.) The exemption, if it has any application, must be given to the co-operative in any case where it transports the products of its farmer members to the market. That is what the co-operative association was doing when it contracted with Smithco, the appellant in this case, as its agent, to haul fresh milk, received from the farmer members and cooled at the co-operative plant, in tankload lots to the St. Louis market.

The question of whether the co-operative may be called a dairy or creamery is beside the point. It was conclusively shown by the record that Sanitary Milk Producers is a co-operative association within the meaning of Sec. 274.300, supra. Its principal object is the marketing of the products of its members numbering some 5000. The record showed that a co-operative can transport products to market at less than it would be required to pay general contract haulers or common carriers whose rates for transportation are fixed by the Public Service Commission. That was one of the factors prompting the legislative bodies to grant exemptions in such cases. See the following taken from the Court of Appeals opinion, 307 S.W.2d loc. cit. 375 (footnote 8): "East Texas Motor Freight Lines, Inc., v. Frozen Food Express, 351 U.S. 49, 51, 76 S.Ct. 574, 576, 100 L.Ed. 917, 922: 'The exemption of motor vehicles carrying "agricultural (including horticultural) commodities (not including manufactured products thereof)" was designed to preserve for the farmers the advantage of low-cost motor transportation. See especially 79 Cong.Rec. 12217. The victory in the Congress for the exemption was recognition that the price which the farmer obtains for his products is greatly affected by the cost of transporting them to the consuming market in their raw state or after they have become marketable by incidental processing.' "

It is our opinion that the legislature, by Sec. 274.300, supra, placed the co-operatives in the same position as the individual farmer. In other words, whatever the producer may do directly may be done through a co-operative association. For a discussion of this subject, see State ex rel. Wisconsin Allied Truck Owners Ass'n v. Public Service Commission of Wisconsin, 207 Wis. 664, 242 N.W. 668, loc. cit. 675, 676, where the Supreme Court of Wisconsin approved interpretation by the Public Service Commission of that state of a statute very similar to our statute. The conclusion we have reached conforms to the ruling in that case. See also In re Rodgers, 134 Neb. 832, 279 N.W. 800; 5 Am.Jur. 572, Sec. 108, and cases there cited; and 60 C.J.S. Motor Vehicles § 94(4), p. 347, agricultural products.

It is our opinion that the Public Service Commission erred when it promulgated the "rule of thumb" to the effect that the transportation of dairy products by a co-operative to the market was not exempt. We rule that the exemption

contained in Sec. 390.030, supra, was made applicable to co-operatives by Sec. 274.300, supra. It is this interpretation of the statutes by us that makes it unnecessary for us to consider whether the Federal Marketing Agreement Act of 1937 and the regulations issued in pursuance thereof have so preempted the field that the Public Service Commission does not have jurisdiction over the transportation of milk by a co-operative association. The statute of Missouri exempts such transportation and therefore there can be no interference. If, however, a co-operative shall contract with a common carrier for the transportation of milk, then, of course, the common carrier would be subject to all the rules and regulations of the Public Service Commission including the fixing of the rates to be charged. Neither can a common carrier by contracting to haul milk exempt itself from the jurisdiction of the Public Service Commission. The appellant in this case, Smithco, applied for a certificate of convenience and necessity. If it had been granted such a certificate, it would have thereby subjected itself to the jurisdiction of the Public Service Commission.

■ The problem now is, what shall our order be in this case? It is apparent to us, as it seemed to be to the Court of Appeals, that this controversy would never have been presented to the Public Service Commission had it not been for the rule that co-operatives were not permitted to haul dairy products to the markets without a certificate of convenience and necessity. Note what the Court of Appeals said, as quoted supra, "Appellant has limited its contention of lack of jurisdiction on the part of the Missouri Public Service Commission to those vehicles while being used exclusively in making the described hauls of fluid milk from the farm via its Lebanon plant to St. Louis in the Federal Marketing Area." In view of these circumstances, we deem it to be in the interest of all parties concerned that this case be remanded to the Commission to consider the question anew in conformity with the interpretation of the statutes as set forth in this opinion. It may be that Smithco, in view of our ruling, will withdraw its application for a certificate.

The order will therefore be that the case be reversed and remanded to the Circuit Court of Cole County with directions to remand the case to the Public Service Commission to proceed in conformity with the law as expressed in this opinion.

It is so ordered.

DALTON, C. J., HOLLINGSWORTH, EAGER, STORCKMAN, and LEEDY, JJ., and STONE, Special Judge, concur.

HYDE, J., not sitting.

On Motion for Rehearing

PER CURIAM.

Respondents filed a motion for rehearing in this case wherein a number of points were presented which we shall consider briefly.

■■ In the first point, it is said that the court predicated the construction of Sec. 274.300, V.A.M.S., upon the erroneous theory that its enactment was preceded by Sec. 390.030 [1] of the Public Service Commission Act. It is stated that Sec. 390.030 was enacted in 1931 and Sec. 274.300 in 1923. Respondents did not mention this particular point in their brief even though it was claimed in the brief of Amici Curiae, filed 10 days before the brief of Dairyland Transportation Corporation, that Sec. 274.300 must be considered in conjunction with Sec. 390.030. There is no merit in respondents' contention. Statutes relating to the same subject matter must be considered together. This rule applies even though the statutes are found in different chapters and were enacted at

1. Now V.A.M.S. § 390.031.

different times. 82 C.J.S. Statutes § 366, pp. 801–813, and cases there cited. See also Donnelly Garment Co. v. Keitel, 354 Mo. 1138, 193 S.W.2d 577, loc. cit. 581 (3, 4).

■ In the second point of the motion, respondents say that "The whole opinion is *dicta* because it is based upon assumptions of fact not appearing in the record." They say that there is nothing in the record indicating that Sanitary Milk Producers was organized under Chapter 274, V.A.M.S., as a co-operative association or that it was organized in another state as a co-operative. This is another point made for the first time in the motion for rehearing. All parties throughout this case assumed that Sanitary was a co-operative. The Court of Appeals stated in its opinion (307 S.W.2d 361, loc. cit. 364) that Sanitary was a co-operative. It may also be found in the record. Note the evidence of Russell E. Spaulding:

"Q. State your name, please. A. Russell E. Spaulding.

"Q. Where do you live? A. Belleville, Illinois.

"Q. And what is your occupation? A. I am general manager of Sanitary Milk Producers.

"Q. How long have you been engaged in that business? A. Seven years with Sanitary Milk Producers, and 25 years actively engaged in the same type of business.

"Q. Mr. Spaulding, if you will, describe and tell the Commission something about the nature of the business of Sanitary Dairies. A. Sanitary Milk Producers is a co-operative association composed of 5000 dairy farmers who reside in approximately 25 counties in Illinois and some 68 counties in Missouri, the greater number and the greater volume of milk, of course, coming from Missouri. Sanitary was organized 25 years ago to serve the needs of the dairy farmers and has

been doing the job substantially since that time. * * *"

It is obvious that Sanitary Milk Producers is a co-operative association and therefore there is no merit in this point.

■ In the third point, respondents say that Sanitary does not obtain all of its milk from its farmer members but some milk is purchased and obtained from other sources; that, therefore, the exemption should not apply. We shall answer this point by quoting from protestant Dairyland Transportation Corporation's brief where it is stated, "The shipper, Sanitary Producers, for the purpose of this case, ships in *intrastate* commerce fluid milk in bulk and at wholesale from Mountain Grove and Lebanon, Missouri, to processors in St. Louis, Missouri. There the milk is pasteurized, bottled and sold at retail. This milk is originally obtained from farm producers around Mountain Grove and Lebanon, Missouri. At Lebanon, for example, Sanitary tests the milk of the individual producers, pours it into common containers or vats, refrigerates it, and then ships this commingled milk of all the producers in Smithco's special over-the-road trailer tanks of 5,000 or more gallons capacity." It is apparent from this statement and the rule of the Public Service Commission that even though all of the milk of Sanitary was obtained directly from producers and shipped to the St. Louis market by Sanitary, it could not be hauled except by a carrier having a permit of convenience and necessity from the Public Service Commission. We held the rule of the Public Service Commission to be erroneous and for that reason deemed it to the interest of all parties concerned that the case be remanded to the Commission so the Commission could consider the matter in conformity with our opinion as to the meaning of Secs. 390.030 and 274.300.

■ Points four and five of the motion for rehearing may be considered together. In some respects these points are duplications of those we have considered and in other respects they are rearguments of

points decided in the original opinion. There is one point we desire to answer. It is said that the statute 274.300 provides that the exemptions applying to agricultural products shall also apply to such products "in the possession or under the control of the association." It is claimed that when Sanitary delivers the milk to the carrier Smithco, the milk is no longer under the control of Sanitary. Here again, we shall quote from Dairyland's brief where it is said, "Applicant's single shipper is Sanitary. Despite this, applicant seeks common carrier authority. Moreover, *its single shipper would not be satisfied with ordinary common carrier service*. Sanitary insists that applicant's vehicles be kept on its premises for its 'sole and exclusive use, and you use them when you want them.' Shipper insists on having 'first call' over any other shipper. He does not consider this 'preferential treatment.'" The record fully justifies that statement. Sanitary had full control over the hauling of the milk. Smithco was employed for that purpose. Of course, Smithco was not a common carrier. Smithco may have been a contract carrier for Sanitary. If so, does Sec. 390.061, Cum.Supp. RSMo 1957 Annotations, apply? We need not rule the question since it has not been mentioned all through this case. However, note the first paragraph which reads:

"*Except as otherwise provided in section 390.030*, no person shall engage in the business of a contract carrier in intrastate commerce on any public highway in this state unless there is in force with respect to such carrier a permit issued by the commission, authorizing such operations." (Emphasis supplied.)

Sec. 390.061 indicates that the legislative policy is, and has been, to exempt from the jurisdiction of the Public Service Commission the transportation of farm products from farm to market.

We have given the motion for rehearing full consideration and have found it without merit. It is hereby overruled.